UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RUSSELL BOON RHEA,            :
                              :
    Plaintiff,                :
                              :
    v.                        :          CASE NO. 3:05CV189 (VLB)
                              :
ALFRED UHRY,                  :
                              :
    Defendant.                :

ORDER

Pending before the court is the defendant's Motion for Protective Order (doc. #160). The first day of the defendant's deposition took place on May 25, 2007. The defendant moves for a protective order barring the plaintiff from asking certain questions when the defendant's deposition continues.[1] The defendant breaks the disputed questions down into several groups, as discussed below.

**A. Defendant's Present Belief Regarding Molestation**

The defendant objects to the following questions asked at the previous deposition and seeks an order that they may not be asked when the deposition continues:

> "Well, let me put it this way. Is your present belief that Eleanor Rhea was sexually molested by me?" (Transcript of Alfred Uhry deposition of 5/25/07 ("Uhry Dep.") at 14, line

---

[1]The defendant originally sought a protective order barring the deposition from continuing at all. The court has already ruled that the deposition will go forward and gave the parties an opportunity to supplement their filings as to limitations that might be placed on the continued deposition. See doc. #169.

4.)²

"Does this letter coupled with the letter you read from Eleanor change your opinion as to whether or not Eleanor Rhea… there was ever any sexual inappropriateness with Eleanor?" (Tr. p.61, line 15.)

"Does this change your opinion as to whether or not there was inappropriate sexual contact with Eleanor Rhea?" (Uhry Dep. at 66, line 18.)

"From the documents you've seen today, does that tend to make you believe it less or has no effect?" (Uhry Dep. at 68, line 5.)

"Before you jump into that, do you understand why I am upset by the allegations made by Tom Burdett?" (Uhry Dep. at 78, line 18.)

The defendant argues that these questions are not reasonably calculated to lead to the discovery of admissible evidence and relies particularly on the court's previous ruling that "[t]he Defendant's present belief is irrelevant to the defamation claim." (See doc. #140.)

The plaintiff responds that the defendant's present belief is relevant because the defendant has raised the defense of truth and should not be permitted to do so if he does not now believe that his statements were true. He also argues that these questions are relevant to the malice element of his claims of

---

²Extracts from the deposition transcript were attached as exhibits to the parties' papers. The entire deposition transcript was submitted as Defendant's Exhibit 1 during oral argument on November 14, 2007.

negligent or intentional infliction of emotional distress.[3]

The court has already held that the defendant's present belief is irrelevant to the defamation claim. What the defendant currently believes sheds no light on whether his statements were objectively true or even whether he believed them to be true at the time he made them. The defendant's present belief is similarly irrelevant to the emotional distress claim because it does not relate to his knowledge or motives at the time the alleged statements were made.[4]

When the defendant's deposition continues, the plaintiff may not ask the five questions listed above or otherwise inquire

---

[3]Plaintiff's Amended Complaint, (doc. #30) alleges that the defendant's statements about him caused him emotional distress. At oral argument, the plaintiff indicated that one of his claims is that the defendant caused him emotional distress by causing another relative to testify falsely in a proceeding related to the plaintiff's divorce. The plaintiff's complaint, however, does not include any factual allegations regarding this claim, and the emotional distress counts refer only to the defendant's own statements.

[4]Under Connecticut law, a party claiming intentional infliction of emotional distress must show:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Crocco v. Advance Stores Co., 421 F. Supp. 2d 485, 503 (D. Conn. 2006), quoting Carrol v. Allstate Ins. Co., 262 Conn. 433, 443, 815 A.2d 119 (2003). What the defendant currently believes has no bearing on whether the conduct was extreme and outrageous.

about the defendant's present belief as to whether the plaintiff molested his daughter.

**(B) Defendant's Statements to Alene Rhea**

Alene Rhea is the plaintiff's daughter and the defendant's granddaughter. The defendant objects to the following questions about his communications with her.

> "Did you tell (Alene) Rhea that she should not tell you where I was? That she should not relay her location to me?" (Uhry Dep. at 104, line 17.)
>
> "Did you ever tell her you had a fear I would come and try to hurt her?" (Uhry Dep. at 105, line 4.)
>
> "During that time period, did you instruct (Alene) not to contact me?" (Uhry Dep. at 107, line 14.)
>
> "Did you instruct her to never be alone?" (referring to Alene Rhea) (Uhry Dep. at 108, line 3.)
>
> "Does it concern you that (Alene) moved in with me?" (Uhry Dep. at 63, line 2.)
>
> "What did you do about those concerns, if anything?" (Uhry Dep. at 63, line 23.)

The Court's previous ruling (doc. #140) prohibited written discovery regarding these or similar statements made by the defendant to Alene. The court noted that: "The Plaintiff admitted in open Court that he was not injured by these statements and does not rely on them for any claim. The Court finds that these alleged statements are not relevant to the Plaintiff's complaint."

Plaintiff now argues that these questions are relevant to the "'malice' element of the intentional infliction claim" and to the defendant's plan, purpose, intent, and state of mind. (Doc.

4

#166.) He argues that these questions may lead to evidence that is admissible under F.R.E. 404 and 406.

The plaintiff has failed to demonstrate how these statements, which were not apparently contemporaneous to the allegedly defamatory statements, are relevant to the defendant's alleged motive for either the alleged defamation or intentional infliction of emotional distress.

**(C) Questions relating to 438 Munger Lane and house in Boulder**

The defendant seeks a protective order barring the plaintiff from asking the following questions:

> "Have you ever lived at 438 Munger Lane, Bethlehem, Connecticut?" (Uhry Dep. at 94, line 19.)
>
> "Have you ever lived at 5044 Buckingham Road, Boulder, Colorado?" (Uhry Dep. at 94, line 25.)
>
> "Did you buy a condominium at 5044 Buckingham Road, Boulder, Colorado?" (Uhry Dep. at 95, line 6.)
>
> "Was the property you purchase property in Bethlehem, Connecticut, correct?" (Uhry Dep. at 118, line 8.)
>
> "Regarding the property in 439 Munger Lane, did you purchase a house at 439 Munger Lane?" (Uhry Dep. at 119, line 23.)
>
> "Did you purchase that property as an investment property?" (Uhry Dep. at 120, line 5.)
>
> "Have you ever spend the night at 439 Munger Lane?" (Uhry Dep. at 120, line 12.)
>
> "How many nights have you spent at 439 Munger Lane?" (Uhry Dep. at 120, line 18.)
>
> "Did you subsequently refinance the property at 439 Munger Lane?" (Uhry Dep. at 121, line 7.)
>
> "Has 439 Munger Lane ever been your primary residence?" (Uhry Dep. at 121, line 15.)

5

Apparently, Kate Uhry, one of the defendant's daughters, resides at the Munger Lane house, and previously resided at the Buckingham Road house in Boulder, Colorado. It appears that the defendant either purchased the homes for her or assisted with financing for them. The plaintiff believes that the defendant's answers to these questions will lead to evidence of dishonest conduct on the defendant's part.[5] The defendant argues that this information is irrelevant to the defamation claim. In its previous ruling, the court held that the plaintiff was not entitled to the production of mortgage documents for the Munger Lane House because they were not reasonably calculated to lead to the discovery of admissible evidence. The court also noted that plaintiff's argument that they would undermine defendant's credibility was based on pure speculation.

At oral argument, the plaintiff pointed to F.R.E. 608(b), which provides that specific instances of the conduct of a witness may not be proved by extrinsic evidence for purposes of impeaching credibility.

> They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

---

[5]The issue appears to be whether the defendant properly characterized one or both of the homes as his own primary residence.

F.R.E. 608(b). At trial, 608(b) cross-examination can be permitted, in the discretion of the court, if the questioner has a good faith basis for the questioning. See Hynes v. Coughlin, 79 F.3d 285, 294 (2d Cir. 1996). The plaintiff represented to the court that he had obtained the relevant mortgage documents from the town hall, (11/14/07 Hearing, doc. #179 at 31), and that they supported his belief that the answers to these questions would shed light on the defendant's lack of honesty.

In view of the possibility that the court might permit the plaintiff to cross-examine the defendant or other witnesses about these issues at trial, the court will permit the defendant to ask these questions at the continued deposition.[6]

**(D) Questions about defendant's tax returns and expenditures**

> "You think you spend $392 per month on those books?" (Uhry Dep. at 96, line 19.)
>
> "Have you reported on your tax return that you spend $392 per month on books?" (Uhry Dep. at 96, line 25.)
>
> "Do you spend $392 per month on books?" (Uhry Dep. at 97, line 7.)
>
> "Are you in the phone book?" (Uhry Dep. at 97, line 12.)
>
> "Do you think you spend $725 per month on your telephone bill?" (Uhry Dep. at 97, line 16.)
>
> The plaintiff explained at oral argument that he has

---

[6]The plaintiff has independently obtained the relevant mortgage documents, and the court does not revisit its prior ruling as to production of the mortgage documents themselves.

obtained one or more of the defendant's tax returns and that he believes it contains inaccuracies that reflect on the defendant's credibility. The plaintiff conceded that the question "Are you in the phone book" is unrelated to the tax returns. Pursuant to F.R.E. 608(b), the plaintiff may ask all of these questions except "Are you in the phone book" at the continued deposition.

**(E) Questions regarding defendant's character and opinions regarding sexual predators**:

> "Is it true, are you a coward?" (Uhry Dep. at 102, line 12.)
>
> "Have you ever done anything brave in your life?" (Uhry Dep. at 103, line 4.)
>
> "Well, I mean you were molested by your gardener, correct?" (Uhry Dep. at 34, line 9.)
>
> "From your experience is pedophilia something that comes and goes or is it more of a permanent condition?" (Uhry Dep. at 34, line 2.)
>
> "Have you heard of the existence of sexual predator websites?" (Uhry Dep. at 35, line 2.)
>
> "Have you heard about notification about released sexual predators?" (Uhry Dep. at 35, line 11.)
>
> "Have you heard of similar sort of things for burglars or other criminals?" (Uhry Dep. at 35, line 16.)
>
> "Is there a special place in our society for sexual predators?" (Uhry Dep. at 35, line 21.)
>
> "Do you hate anyone?" (Uhry Dep. at 98, line 9.)
>
> "Are you feeling harassed at this moment?" (Uhry Dep. at 119, line 14.)

The court finds that these questions are not relevant to the

plaintiff's claims.  The plaintiff may not ask these questions during the continued deposition.

**(F) Questions regarding defendant's wealth and insurance coverage:**

> "You have a certain amount of wealth, correct?" (Uhry Dep. at 17, line 6.)
>
> "If you lost this civil matter who will pay?" (Uhry Dep. at 8, line 24.)
>
> "It is your understanding that your insurance company would pay or is it your understanding you will pay?" (Uhry Dep. at 9, line 4.)
>
> "Are you aware that Defendants with wealth are not --- are you aware that successful Plaintiffs have no incentive to encourage losing Defendants to subrogate if they have wealth?" (Uhry Dep. at 17, line 12.)
>
> "Do you know what subrogation means?" (Uhry Dep. at 16, line 5.)
>
> "Do you understand in civil proceedings Defendants are allowed to make decisions in their own defense?" (Uhry Dep. at 17, line 20.)
>
> "Would you say a sizeable portion of your personal wealth is with that company?" (Uhry Dep. at 148, line 20.)
>
> "Do you understand that Attorney Armentano's defense is being supplied by your insurance company". (Uhry Dep. at 8, line 6.)

At oral argument, the plaintiff withdrew all of his questions having to do with insurance coverage.  The defendant's motion for protective order is granted as to the questions regarding insurance coverage and subrogation.

As to the questions relating to the defendant's wealth, the plaintiff argues that they are relevant to punitive damages.  The

defendant argues that plaintiff's complaint does not ask for punitive damages and they are therefore not at issue. (Doc. #52-54.)

Under Connecticut law, punitive damages are limited to the prevailing party's litigation expenses. <u>Ikram v. Waterbury Bd. of Educ.</u>, 1997 U.S. Dist. LEXIS 14619 (D. Conn. 1997) (citing <u>Berry v. Loiseau</u>, 223 Conn. 786, 827 (1992)). Discovery regarding the defendant's wealth is not likely to lead to discovery of evidence that will be admissible at trial. The plaintiff may not question the defendant about his assets.

The plaintiff explained at oral argument that the question about whether the defendant's personal wealth is with "that company" is relevant because "that company" is the Anthony Montag Company. John Montag runs the company and he might be a witness at trial. In light of that explanation, and in light of the defendant's representation at oral argument that Montag might be called as a witness, the court will permit the plaintiff to ask questions about the relationship between Montag and the defendant, including whether a sizeable portion of the defendant's personal assets are invested with Montag's company.

**(G) Questions regarding Emily Rhea**

> "Let's talk about Emily Rhea. When did you start sending her to the psychiatrist?" (Uhry Dep. at 36, line 5.)

> "Did you start sending Emily to the psychiatrist in 8th grade?" (Uhry Dep. at 37, line 16.)

"Have you supported her in psychiatrist care most of her life?" (Uhry Dep. at 37, line 23.)

"Are you aware of the diagnosis of your daughter, Emily? (Uhry Dep. at 38, line 3.)

"Are you aware your daughter, Emily, has been diagnosed with narcissistic personality disorder?" (Uhry Dep. at 38, line 9.)

"Do you support Emily Rhea today?" (Uhry Dep. at 39, line 9.) (Uhry Dep. at 39, line 13.)

"Does it make you angry you have to support her?" (Uhry Dep. at 39, line 18.)

"What makes you angry?" (Uhry Dep. at 40, line 2.)

"It is your testimony you paid to remodel the kitchen of that house?"(referring to Emily's residence at Wheaton Road, New Milford, CT) (Uhry Dep. at 55, line 20.)

"Were you concerned that there would be a drain on your finances?" (Uhry Dep. at 77, line 7.)

"During the period of June 2003 to December 2004, were you lending Emily one thousand dollars a week?" (Uhry Dep. at 127, line 16.)

"Did you hire three attorneys for Emily for the divorce?" (Uhry Dep. at 128, line 12.)

"Did you pay Attorney Fanone's (phonetic) attorney bills?" (Uhry Dep. at 128, line 18.)

"Does Emily have a credit card of yours that she uses?" (Uhry Dep. at 192, line 24.)

"Have you considered buying an investment property for Emily?" (Uhry Dep. at 193, line 17.)

"Have you considered investment property that you would invest in with Emily?" (Uhry Dep. at 195, line 11.)

"What's your understanding of what her role was vis-à-vis the children?" (referring to Attorney Judy Dixon) (Uhry Dep. at 33, line 8.)

Emily Rhea is the plaintiff's ex-wife and the defendant's daughter.  The plaintiff claims that his ex-wife accused him of attempting to murder her by placing nicotine patches on her body while she slept, and that the defendant's defamatory acts included repeating those statements to others.  The plaintiff argues that the defendant's knowledge of her psychological problems is therefore relevant because the defendant had reason to know that she was not telling the truth.  The court will permit the plaintiff to ask the first five questions above.

As to the questions regarding the defendant's financial support of his daughter, the court is unpersuaded by plaintiff's argument that this is relevant to the defendant's motive for the conduct at issue in this litigation.  The motion for protective order is therefore granted as to all but the first five questions listed above.

**(H) Questions Regarding Trust Fund**

> "Did you control a trust that was established from the estate left by your mother?" (Uhry Dep. at 135, line 22.)
>
> "Was there a trust established from your mother's estate?" (Uhry Dep. at 136, line 4.)
>
> "Were you aware that I was trying to get details of the trust disbursement?" (Uhry Dep. at 137, line 23.)

The court has previously held, and continues to hold, that questions regarding this trust are not relevant to the claims in plaintiff's complaint.  The defendant's motion is granted as to these questions.

12

**(I) Questions regarding settlement discussions**

> "Were you made—are you aware of a settlement offer made in this case yesterday?" (Uhry Dep. at 20, line 19.)

> "What I am holding in my hand is a copy of an e-mail I sent to Attorney Armentano yesterday. Could you take a moment and read that please."(Uhry Dep. at 22, line 17.)

> "Is there anything in it you don't understand?" (Uhry Dep. at 22, line 22.)

At oral argument, plaintiff withdrew his claim as to these questions. The defendant's motion for protective order is granted as to these questions.

**(J) Questions regarding Kate Uhry**

> "Would you characterize her as a gossip?" (referring to Kate Uhry, the Defendant's daughter) (Uhry Dep. at 46, line 10.)

> "Have you ever gotten a dime back?" (referring to the money the Defendant might have contributed to the purchase of Kate Uhry's home). (Uhry Dep. at 54, line 22.)

The plaintiff argues that the first of these questions is relevant because the defendant defamed plaintiff to Kate Uhry, defendant's daughter and the sister of plaintiff's ex-wife, and that his knowledge of her propensity for gossip is relevant to his emotional distress claims. The plaintiff may ask that question.

The plaintiff has not shown the relevance of the second question, and defendant's motion for protective order is granted as to that question.

**K. Questions regarding reaction to testimony of other witnesses**

The defendant has also asked the court to bar the plaintiff

from asking the defendant to read certain materials, including transcripts of testimony "and to confirm and/or react to what they said." The defendant has not pointed the court towards any specific questions in the previous deposition transcript, and the court cannot determine the relevance of these questions in a vacuum. The defendant's motion is therefore denied as to this request.

The parties shall immediately schedule the second day of the defendant's deposition. Based on the transcript submitted by the defendant, the court understands that the previous deposition lasted from 10 a.m. to 4 p.m. on November 14, 2007, possibly with some breaks. The plaintiff is entitled to a 7-hour deposition under the Federal Rules of Civil Procedure.

SO ORDERED at Hartford, Connecticut this 17th day of January, 2008.

```
                  _____/s/_____
                  Donna F. Martinez
                  United States Magistrate Judge
```